UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------- X
   :

IN RE: METHYL TERTIARY BUTYL    :
ETHER ("MTBE") PRODUCTS    :
LIABILITY LITIGATION    :
-------------------------------------------------- :
   :

This document relates to:    :
   :
*Orange County Water District v. Unocal*    :
*Corporation, et al.*, 04 Civ. 4968    :
   :

-------------------------------------------------- X

**OPINION AND ORDER**

**Master File No. 1:00-1898**
**MDL 1358 (SAS)**
**M21-88**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION

This is a consolidated multi-district litigation ("MDL") relating to

contamination – actual or threatened – of groundwater from various defendants'

use of the gasoline additive methyl tertiary butyl ether ("MTBE") and/or tertiary

butyl alcohol, a product formed by the breakdown of MTBE in water.  In this case,

plaintiff Orange County Water District (the "District"), which is charged with

maintaining groundwater quality, alleges that defendants' use and handling of

MTBE has contaminated, or threatened to contaminate groundwater within its

jurisdiction.  Familiarity with the underlying facts is presumed for the purposes of

this Order.[1]

Currently before the Court are two motions:  (1) a motion for summary judgment brought by all defendants in this action on various grounds (the "Omnibus Motion"),[2] and (2) a motion for partial summary judgment brought by certain defendants on claims brought by the District at four designated focus trial sites, alleging that the District suffered no compensable injury or cognizable damages at those trial sites (the "Trial Sites Motion").[3]  For the reasons stated below, defendants' Omnibus Motion is GRANTED in part and DENIED in part. Defendants' Trial Sites Motion is DENIED.

---

[1]     For a thorough recitation of the District's factual allegations, *see In re MTBE*, 824 F. Supp. 2d 524, 529-32 (S.D.N.Y. 2011); *In re MTBE*, 676 F. Supp. 2d 139, 149-50 (S.D.N.Y. 2009).

[2]     For a detailed list of the specific grounds and corresponding movants, *see* Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment ("Def. Mem.") at 26-35.

[3]     *See generally* Memorandum of Law of Defendants Atlantic Richfield Company, BP West Coast Products LLC, BP Products North America, Inc., Arco Chemical Company, Lyondell Chemical Company, Shell Oil Company, Equilon Enterprises LLC, Texaco Refining and Marketing Inc., Union Oil Company of California, Valero Marketing and Supply Company, Valero Refining Company–California, and Ultramar Inc. in Support of Their Motion for Summary Judgment Due to Lack of Injury and Damages at Certain Trial Sites ("Def. Trial Sites Mem.").

## II.   BACKGROUND[4]

The history of this now ten year old lawsuit is contained within the hundreds of pages worth of prior opinions I have already issued in this case.  Once again, I provide a very brief overview.  The crux of the District's lawsuit is that releases of MTBE, contained in defendants' gasoline, have reached, or will reach, water production wells, contaminating Orange County's water supply.  For the past decade, defendants have chipped away at the District's case through various stipulations and favorable summary judgment rulings.[5]  The District's own attempts to prevail on its claims before trial have been less successful.[6]  What remains are the District's timely claims for nuisance, negligence, strict liability,

---

[4]      The facts recited below are drawn from the pleadings, the parties' Local Civil Rule 56.1 Statements, the declarations submitted in connection with this motion, and the exhibits attached thereto.  These facts are undisputed unless otherwise noted.  Where disputed, the facts are viewed in the light most favorable to the nonmoving party.  *See Beard v. Banks*, 548 U.S. 521, 529-30 (2006).

[5]      *See, e.g.*, *In re MTBE*, No. 04 Civ. 4968, 2014 WL 4631416 (S.D.N.Y. Sept. 16, 2014) (dismissing all claims against certain defendants on ground of res judicata); *In re MTBE*, 676 F. Supp. 2d 139 (S.D.N.Y. 2009) (granting in part certain defendants' motion for summary judgment on statute of limitations grounds); *In re MTBE*, 475 F. Supp. 2d 286 (S.D.N.Y. 2006) (same).

[6]      *See, e.g.*, *In re MTBE*, 824 F. Supp. 2d 524 (S.D.N.Y. 2011) (denying the District's motion for partial summary judgment on statutory and common law claims and directing the District to show cause as to why summary judgment should not be granted to defendants on the District's trespass claim, which the Court later dismissed).

violations of the Orange County Water District Act ("OCWD Act"), and declaratory relief against various defendants at thirty-one focus stations, each of which are associated with certain focus plumes.[7]  In this section, I describe the specific grounds of defendants' motions and provide an overview of the facts relevant to resolving those motions.

A.    **The Pending Motions**

In the Omnibus Motion, various groups of defendants have moved for summary judgment on eight grounds:[8]  (1) lack of affirmative conduct by defendants which is necessary in order to prevail on a claim for nuisance, (2) lack of evidence of reasonable abatability by plaintiff which is necessary in order to prevail on a claim for continuing nuisance, (3) lack of affirmative conduct by defendants which is necessary in order to prevail on a claim under the OCWD Act,

---

[7]    *See* Case Management Order 116 (displaying the claims brought against defendants by station, and showing which stations are associated with which plumes).  A "plume" is essentially a mass of MTBE formed by MTBE releases from stations in close proximity.

[8]    As noted above, the groups of defendants for each ground are different.  For reference, I will refer to these groups based on the numbered grounds listed below (*e.g.* defendants moving for summary judgment on nuisance claims due to lack of affirmative conduct are the "Issue 1 defendants").  This terminology matches the language used in the appendices to defendants' memorandum of law, which spell out the corresponding movants for each of the grounds.  *See* Def. Mem. at 26-35.

(4) lack of evidence of any recoverable costs incurred by plaintiff which is necessary in order to prevail under the OCWD Act, (5) lack of evidence tracing defendants' gasoline to the stations at issue, (6) lack of evidence tracing particular defendants' gasoline from the stations at issue to the production wells, (7) claims at certain stations are time-barred, and (8) failure to disclose information in discovery.[9]  In the Trial Sites Motion, defendants move for partial summary judgment at four focus stations where defendants claim that the District cannot establish any compensable injury.[10]

In opposition to both the Omnibus Motion and the Trial Sites Motion, the District relies heavily on declarations by its fate-and-transport expert, Dr. Stephen Wheatcraft.[11]  On September 22, 2014, I denied defendants' motion to strike Dr. Wheatcraft's first declaration, rejecting their argument that the declaration constituted a "sham affidavit" because of alleged contradictions

---

[9]      *See generally* Def. Mem.

[10]     *See generally* Def. Trial Sites Mem.

[11]     *See* 7/21/14 Declaration of Dr. Stephen W. Wheatcraft, expert for the District ("First Wheatcraft Decl."); 10/10/14 Supplemental Declaration of Dr. Stephen W. Wheatcraft ("Second Wheatcraft Decl."); 10/29/14 Second Supplemental Declaration of Dr. Stephen W. Wheatcraft ("Third Wheatcraft Decl.").

between it and his prior deposition testimony.[12]  Following an October 6, 2014 teleconference, during which the parties debated the merits of Dr. Wheatcraft's fate-and-transport modeling,[13] the District submitted, at the Court's request, a supplemental declaration of Dr. Wheatcraft explaining in further detail how his model traced gasoline from the individual stations to production wells.[14]  With the Court's permission, defendants filed a response in opposition to this supplemental declaration, including a declaration by their own expert,[15] and the District filed a final supplemental declaration of Dr. Wheatcraft replying to defendants' opposition.[16]

### B.    Dr. Wheatcraft's Fate-and-Transport Model

At the heart of both summary judgment motions is the disputed testimony of Dr. Wheatcraft, who purports to trace MTBE releases from individual stations to production wells by modeling the path of MTBE plumes.  To explain

---

[12]    *See In re MTBE*, No. 04 Civ. 4968, 2014 WL 5088095 (S.D.N.Y. Sept. 22, 2014).

[13]    *See* 10/6/14 Teleconference Transcript (Dkt. No. 429) ("Conf. Tr.").

[14]    *See* Second Wheatcraft Decl.

[15]    *See* Defendants' Response to Supplemental Declaration of Dr. Stephen Wheatcraft ("Def. Response to Second Wheatcraft Decl."); 10/17/14 Declaration of John Wilson ("Wilson Response Decl.").

[16]    *See* Third Wheatcraft Decl.

6

how the model works, it is helpful first to state what Dr. Wheatcraft does not do: trace specific MTBE releases from their precise, station-specific release point to the associated production well.[17]  While Dr. Wheatcraft did conduct station-specific models to trace MTBE in other regions of California, he claims that in Orange County, a station-specific model "was not possible" for most of the stations "due to clustering."[18]  In essence, Dr. Wheatcraft argues that where there are many individual stations in close proximity, as there allegedly are in Orange County, it is "nearly impossible" to attribute MTBE detections to a single station.[19] Accordingly, a corresponding station-specific model would be inaccurate because the "mass of MTBE would be knowingly understated."[20]

To compensate for this perceived problem, Dr. Wheatcraft groups individual stations into "focus plumes."  The plumes are essentially MTBE masses formed by releases from nearby individual stations; Dr. Wheatcraft's model charts the migration of the plumes to production wells.[21]  He states that a "separate MTBE source term for each of the focus plume stations was added to the model at the

---

[17]    *See generally* Second Wheatcraft Decl.

[18]    Third Wheatcraft Decl. ¶ 11.

[19]    Second Wheatcraft Decl. ¶ 10.

[20]    *Id.* ¶ 11.

[21]    Wheatcraft Decl. ¶ 5.

location of the station."[22]  Therefore, though Dr. Wheatcraft is tracing the path of

"plumes," not individual station-specific releases, the data driving the model is

information regarding releases "from each individual focus plume station."[23]

Ultimately, Dr. Wheatcraft insists that his model "shows, and it is [his] opinion,

that MTBE from each station will enter a plume, comingle [sic] with MTBE from

other stations, and then impact one or more wells."[24]

> Defendants and their expert disagree with Dr. Wheatcraft's

conclusion, as well as the alleged flaws of a station-specific model.[25]  Instead,

defendants argue that "[c]ommingling of plumes in an aquifer does not mean that

alL the contamination from different sources will behave the same way in

groundwater or will necessarily be transported to the same receptor (*e.g.*, a supply

well), or that the 'commingled portion' of the plumes will travel to a supply

well."[26]  Therefore, in order "to determine whether it is more likely than not that

the contamination from one source in an overlapping or commingled plume

---

[22]     *Id.* ¶ 4.

[23]     *Id.*

[24]     Third Wheatcraft Decl. ¶ 14.

[25]     *See generally* Def. Response to Second Wheatcraft Decl.; Wilson Decl.

[26]     Def. Response to Second Wheatcraft Decl. at 6.

impacts a supply well or other reference point one needs to determine whether a pathway exists between that source and the well."[27]

## C.   Defendants' Conduct in Orange County

In this section, I outline the facts relevant to each of the grounds in the Omnibus Motion.  Unless otherwise indicated, these facts are undisputed.

### 1.   Issue 1 Defendants

The Issue 1 defendants move for summary judgment based on the District's alleged lack of evidence to support the type of affirmative conduct necessary to establish a nuisance claim at the corresponding stations.  These defendants did not own the stations at issue.[28]  Some of the Issue 1 defendants entered into supply contracts and branding agreements with the stations at issue.[29]  For instance, World Oil had an agreement with Exxon to brand World Oil's station "Exxon" and sell Exxon-branded gasoline.[30]  Similarly, Chevron USA did not own the station G&M #4, but it did supply the station with gasoline.[31]  However, the

---

[27]     *Id.*

[28]     *See* Defendants' Rule 56.1 Statement in Support of Defendants' Motion for Summary Judgment ("Def. 56.1") ¶¶ 1-77.

[29]     *See, e.g.*, Defendants' Rule 56.1 Reply Statement in Support of Defendants' Motion for Summary Judgment ("Def. Reply 56.1") ¶¶ 2, 6.

[30]     *See id.* ¶ 4.

[31]     *See id.* ¶ 6.

stations themselves, not the defendants associated with the stations, were responsible for providing station employees with training on the handling and storage of gasoline and the clean-up of spills and leaks.[32]  The District contends that the Issue 1 defendants provided "inadequate" instructions regarding the handling, storage, and clean-up.[33]

### 2.    Issue 2 Defendants

The Issue 2 defendants move for summary judgment on the ground that the District lacks evidence of reasonable abatability to state a claim for continuing nuisance.  In response to this contention, the District relies, rather vaguely, on a combination of expert reports claiming that the MTBE contamination in Orange County can and must be abated.[34]  Also relevant to the inquiry of abatability is a determination regarding whether the contaminants at issue are continuing to migrate towards production wells.  The facts underlying this question are summarized above in the description of Dr. Wheatcraft's fate-and-transport

---

[32]    *See, e.g.*, *id*. ¶ 5.

[33]    Plaintiff Orange County Water District's Opposition to Defendants' Omnibus Motion for Summary Judgment ("Pl. Opp.") at 6.

[34]    *See, e.g.*, Plaintiff Orange County Water District's Local Rule 56.1 Statement of Disputed and Material Facts in Opposition to Defendants' 56.1 Statement in Support of Motion for Summary Judgment ("Pl. 56.1") ¶ 78 (citing expert opinions regarding the need to remediate contamination sooner rather than later).

model.

### 3.    Issue 3 Defendants

The Issue 3 defendants move for summary judgment based on the District's alleged lack of evidence to support the type of affirmative conduct necessary to establish an OCWD Act claim at the corresponding stations.  The facts the Issue 1 defendants depend on in support of dismissal of the nuisance claim, summarized above, are the same facts on which the Issue 3 defendants rely.

### 4.    Issue 4 Defendants

The Issue 4 defendants constitute all remaining defendants in this action; they move for summary judgment on the ground that the District lacks evidence of recoverable costs under the OCWD Act.  The District claims that it has incurred "millions of dollars" of "site specific response costs."[35]  According to the District, these costs primarily consist of "drilling to determine the extent of off-site MTBE, assessing site specific conditions and existing remedial activities to determine the threat posed by MTBE at each station and developing steps to address off-site MTBE coming from the focus plume stations."[36]

### 5.    Issue 5 Defendants

---

[35]    Pl. Opp. at 14.

[36]    *Id*.

The Issue 5 defendants move for summary judgment on the ground that the District lacks evidence tracing these defendants' gasoline to the stations at issue.  In September 2003, at the outset of the litigation, the District's counsel told the Court that the District needed defendants' "list of jobbers" so that the District "could go to the jobbers and get their records" in an effort to trace gasoline to the stations at issue.[37]  In response, defendants provided extensive jobber lists, including seven jobbers the District identified as among the biggest distributors in Orange County.[38]  Several years later, in April 2010, the District issued four jobber subpoenas.[39]  Ultimately, the District deposed only one jobber.[40]

Defendants provided extensive disclosures to the District regarding MTBE suppliers.[41]  One of the District's own experts, James Barrington, opined that "the manufacturers and suppliers . . . may be identified through standard industry practices, as well as through interviews with industry personnel, including

---

[37]     Def. 56.1 ¶ 213.

[38]     *See id.* ¶¶ 211, 215.

[39]     *See id.* ¶ 220.  Of those, only USA Petroleum was among the seven the District considered to be among the largest in the area.  *See id.* ¶ 221.

[40]     *See id.* ¶ 223.

[41]     *See id.* ¶¶ 208-211, 216-218, 226.

station owners and operators."[42]  He also noted that it "may be necessary to review both the manufacturer's records and the records or recollections of jobbers and station operators to identify the manufacturer or supplier."[43]  Nonetheless, the District waited until the final two months of discovery to subpoena nearly forty station operators, and, as noted above, deposed only one jobber.[44]

### 6.      Issue 6 Defendants

The issue 6 defendants comprise all of the remaining defendants in this action.  The facts relevant to their contention that the District cannot trace gasoline from the stations to the production wells are described above in relation to Dr. Wheatcraft's fate-and-transport model.

### 7.      Issue 7 Defendants

The issue 7 defendants move on the ground that claims at certain stations are barred by the statute of limitations.  One of those stations, World Oil #39, had not been identified in the Court's prior statute of limitations ruling.  The District's evidence regarding post-1996 releases at this station consists of testimony by one of its experts, Marcel Moreau, who opines generally that MTBE

---

[42]      *Id.* ¶ 233.

[43]      *Id.*

[44]      *See id.* ¶¶ 223, 230, 241.

releases and leaks in underground storage tanks occur over time in multiple ways.[45]

Based on this testimony, the District disputes that no releases at this station

occurred after 1996.[46]  With regard to another of these stations, Chevron #9-5568,

the District conceded in a prior Rule 56.1 statement submitted in connection with

the Court's prior statute of limitations ruling that its claims accrued prior to May 6,

2000.[47]  MTBE detections at the final station for which defendants seek a statute of

limitations dismissal, Mobil 18-HEP, were last recorded on February 7, 2000.[48]

### 8.    Issue 8 Defendants

The Issue 8 defendants complain that the District failed to disclose

information in discovery.  Defendants' main argument is that in response to

specific interrogatories, the District never identified certain Issue 8 defendants as

potentially liable at various sites at which the District now claims they are liable.[49]

Specifically, defendants served a contention interrogatory requesting that the

District identify each defendant against whom it was seeking damages at each

---

[45]     *See id.* ¶ 256.

[46]     *See id.*

[47]     *See id.* ¶ 257.

[48]     *See id.* ¶ 258.

[49]     *See* Def. Mem. at 23-25.

site.[50]  The District first answered this interrogatory generally in February 2010,

and in May 2010 provided a supplemental response to identify the specific

defendants that the District associated with each site.[51]  These supplemental

responses did not identify the Issue 8 defendants.[52]  Several years after the close of

fact discovery, the District prepared a station matrix identifying the specific claims

it was asserting against each defendant at each station at issue.[53]

## III.   LEGAL STANDARD

Summary judgment is appropriate "only where, construing all the

evidence in the light most favorable to the non-movant and drawing all reasonable

inferences in that party's favor, there is 'no genuine issue as to any material fact

and . . . the movant is entitled to judgment as a matter of law.'"[54]  "A fact is

material if it might affect the outcome of the suit under the governing law, and an

issue of fact is genuine if the evidence is such that a reasonable jury could return a

---

[50]      *See* Def. 56.1 ¶ 259.

[51]      *See id.*  ¶¶  260-263, 265.

[52]      *See id.* ¶ 263.

[53]      *See* Defendants' Reply in Support of Defendants' Motion for
Summary Judgment ("Def. Reply Mem.") at 24-25.

[54]      *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 19 (2d
Cir. 2014) (quoting Fed. R. Civ. P. 56(c)) (some quotation marks omitted).

verdict for the nonmoving party."[55]

"[T]he moving party has the burden of showing that no genuine issue of material fact exists and that the undisputed facts entitle [it] to judgment as a matter of law."[56]  To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts,"[57] and "may not rely on conclusory allegations or unsubstantiated speculation."[58]

In deciding a motion for summary judgment, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."[59]  "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those

---

[55]    *Windsor v. United States*, 699 F.3d 169, 192 (2d Cir. 2012), *aff'd*, 133 S. Ct. 2675 (2013) (quotations and alterations omitted).

[56]    *Coollick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012) (citations omitted).

[57]    *Brown v. Eli Lilly & Co.,* 654 F.3d 347, 358 (2d Cir. 2011) (quotation marks and citations omitted).

[58]    *Id.* (quotation marks and citations omitted).

[59]    *Cuff ex rel. B.C. v. Valley Cent. Sch. Dist.*, 677 F.3d 109, 119 (2d Cir. 2012).

of a judge.'"[60]

## IV.   APPLICABLE LAW

In this section, I first review a relevant case management order setting forth the manner in which the District must prove causation, an element of each of the District's remaining claims.  I then review the rest of the law applicable to the District's claims as addressed in the Omnibus Motion.[61]

### A.   The Case Management Order and Causation:  All Defendants

Central to the dispositive issue of causation with respect to tracing gasoline from each station to a production well is a March 11, 2010 case management order, which states, in relevant part:

> The issue is whether *each* release site identified as part of a focus plume contributed to contamination of the wells associated with that plume.  If OCWD provides no proof that *a particular release site* contributed to such contamination, and OCWD will not drop the release site from that focus plume, then defendants may file a motion

---

[60]   *Barrows v. Seneca Foods Corp.*, 512 Fed. App'x 115, 117 (2d Cir. 2013) (quoting *Redd v. New York Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012)).

[61]   The Trial Sites Motion hinges on whether the District can prove that it suffered an appreciable injury or threat of an appreciable injury at certain trial sites. As I stated in a prior opinion, "'the burden must be on the plaintiff to establish some measure of such things as the magnitude and likelihood of the danger and it cannot be enough to merely suggest a danger and assert that it has not been ruled out.'" *In re MTBE*, 824 F. Supp. 2d at 541 (quoting *Beck Dev. Co. v. Southern Pac. Transp. Co.*, 44 Cal. App. 4th 1160, 1214 (1996)).

for partial summary judgment on that site.[62]

Under California law, causation is an element of each of the District's remaining claims.[63]

### B.    The Commingled Products Theory of Proof:  Issue 5 Defendants

As I have ruled previously, as a general matter, the plaintiffs have "the burden to show that the defendants' products were at the stations at issue when the releases occurred."[64]  Therefore, plaintiffs must provide "reasonably probable" evidence of delivery of the Issue 5 defendants' gasoline to any focus station.[65]  However, under the commingled products theory of proof, which I developed as an alternative liability theory to address the particular facts of this MDL, plaintiffs may be able to prove causation even if they cannot identify the exact defendant who caused the injury.  The commingled products theory is available only in cases where "a plaintiff can prove that certain gaseous or liquid products (*e.g.*, gasoline,

---

[62]    Case Management Order #60 (Dkt. No. 129) ("CMO 60") (emphasis added).

[63]    *See, e.g.*, *Soule v. General Motors Corp.*, 8 Cal.4th 548, 572 (1972) (strict liability); *Koepke v. Loo*, 18 Cal. App. 4th 1444, 1448-49 (1993) (negligence); *Melton v. Boustred*, 183 Cal. App. 4th 521, 542 (2010) (nuisance); Cal. Water Code App. § 40-8(c) (OCWD Act claim).

[64]    *In re MTBE*, 591 F. Supp. 2d 259, 266-67 (S.D.N.Y. 2008).

[65]    *Id.* at 266.

liquid propane, alcohol) of many refiners and manufacturers were present in a

completely commingled or blended state at the time and place that the harm or risk

of harm occurred, and the commingled product caused plaintiff's injury."[66]  In such

cases, "each refiner or manufacturer is deemed to have caused the harm," and to

exculpate itself, a defendant must prove "that its product was not present at the

relevant time or in the relevant place, and therefore could not have been part of the

commingled or blended product."[67]  It follows that this theory is not available to

plaintiffs if they can prove direct causation.[68]

### C.    Public Nuisance:  Issue 1 Defendants

I have previously held that the District is statutorily authorized to

pursue a claim for public nuisance.[69]  I have also summarized California law

regarding nuisance claims based on the manufacture or supply of an allegedly

defective product as follows:

> While it is true that the law of nuisance is not intended to

---

[66]    *In re MTBE*, 447 F. Supp. 2d 289, 301 (S.D.N.Y. 2006).

[67]    *Id.*

[68]    *See In re MTBE*, 980 F. Supp. 2d 425, 475 (S.D.N.Y. 2013) ("Alternate theories of proof are justified not when evidence is lacking, but when gathering evidence is, for practical purposes, impossible.").

[69]    *See, e.g.*, *In re MTBE*, 457 F. Supp. 2d 455, 463 (S.D.N.Y. 2006).

serve as a surrogate for ordinary products liability, California courts have allowed nuisance claims to proceed where the manufacturer's or distributor's actions have created or assisted in the creation of the nuisance. *Such actions, however, must amount to more than simply the manufacture or distribution of the defective product – rather, a defendant must take other affirmative acts that contribute directly to the nuisance.*[70]

### D.   Continuing Nuisance:  Issue 2 Defendants

Determining whether contamination constitutes a continuing nuisance "is ordinarily a question of fact turning on the nature and extent of the contamination."[71]  California courts use three tests to assess whether a nuisance is continuing: (1) "Whether the offens[ive] activity is currently continuing," (2) "whether the impact of the condition will vary over time," or (3) whether the nuisance is "reasonably abatable."[72]  Within this framework, California courts describe "the ongoing *migration* of groundwater contaminants" as "the relevant factor" in "determin[ing] the continuing nature of the offense or activity."[73]

---

[70]    *Id.* at 463 (citations and quotations omitted) (emphasis added).

[71]    *In re MTBE*, 824 F. Supp. 2d at 544 (citations and quotations omitted).

[72]    *California v. Kinder Morgan Energy Partners, L.P.*, No. 07 Civ. 1883, 2013 WL 314825, at *23 (S.D. Cal. Jan. 25, 2013).

[73]    *Id.* at *24 (emphasis in original).  *Accord Arcade Water Dist. v. United States*, 940 F.2d 1265 (9th Cir. 1991).

### E.    Affirmative Conduct Under the OCWD Act:  Issue 3 Defendants

OCWD Act claims can be asserted against only those persons "causing or threatening to cause . . . contamination or pollution."[74]  The Act itself does not clearly define the level of involvement required to trigger liability under it.  Under California law, terms not defined within a statute are interpreted by their plain and ordinary meaning.[75]  "Where the words of a statute do not have a 'plain meaning,' statutory construction is necessary."[76]

### F.    Recoverable Costs Under the OCWD Act: All Defendants

Under the OCWD Act, the District may recover reasonable costs incurred to perform cleanup, abatement, or remedial work.[77]  In this action, I previously granted summary judgment in Defendants' favor at fourteen sites

---

[74]    Cal. Water Code App. § 40-8(c).

[75]    *See, e.g.*, *Hinds Invs., L.P. v. Angioli*, 654 F.3d 846, 850 (9th Cir. 2011).

[76]    *City of Modesto Redevelopment Agency v. Superior Ct. (Dow Chem. Co.)*, 199 Cal. App. 4th 28, 36 (2004) (applying nuisance standard to California's Polanco Act).

[77]    *See* Cal. Water Code App. § 40-8(c).

because under the Act, costs associated with testing production wells and commissioning consultant reports are not related to remediation.[78]

### G.   Statute of Limitations:  Issue 7 Defendants

As I stated in a prior opinion, the District's claims are governed by the three-year statute of limitations found in section 338 of the California Code of Civil Procedure.[79]  "The limitations period begins running when a plaintiff's cause of action accrues," or, when a plaintiff has "suffered some appreciable and actual harm."[80]

### H.   Failure to Disclose Information in Discovery:  Issue 8 Defendants

I have previously held that "[c]ontention interrogatories are treated as judicial admissions which usually estop the responding party from later asserting positions not included in its answers."[81]  In so holding, I noted that where plaintiffs fail to disclose how and why defendants are liable at specific sites, and fail to show that such failure was harmless or substantially justified, late-disclosed theories will

---

[78]   *See In re MTBE*, 279 F.R.D. 131, 138 (S.D.N.Y. 2011).

[79]   *See In re MTBE*, 676 F. Supp. 2d at 145.

[80]   *Id.* (citation and quotations omitted).

[81]   *In re MTBE*, No. 08 Civ. 312, 2014 WL 494522, at *2 (S.D.N.Y. Feb. 6, 2014).

not be permitted.[82]

## V.    DISCUSSION

This section analyzes each issue defendants argue warrants a determination of summary judgment in their favor.  I will begin with the causation issue common to all defendants and then proceed through the remaining issues in the order defendants presented them in their motion.  I also address the Trial Sites Motion in conjunction with the causation issue.

### A.    Dr. Wheatcraft's Model Sufficiently Traces MTBE from Individual Stations to Production Wells

The most important issue presented in defendants' summary judgment motions is whether Dr. Wheatcraft's plume model comports with the Court's instructions regarding causation in CMO 60.  This is because each of the District's remaining claims requires proof that "each release site identified as part of a focus plume contributed to contamination of the wells associated with that plume."[83]

Although defendants present substantial and relatively persuasive evidence that Dr. Wheatcraft's plume model cannot reliably trace gasoline from each individual station to a corresponding production well, their arguments are better suited for a *Daubert* motion challenging Dr. Wheatcraft's methodology than

---

[82]    *See id.* at *3 (granting summary judgment for defendants).

[83]    CMO 60.

for a motion seeking a summary judgment dismissal. The District has insisted repeatedly through Dr. Wheatcraft's declarations that the plume model is the best and most reliable way to prove causation on a station-by-station basis. While I have some hesitation about the validity of the plume theory,[84] it is not my role at the summary judgment stage to decide whether Dr. Wheatcraft can reliably establish causation. Instead, I must draw all inferences and construe all evidence in the District's favor. The Court has afforded the District several opportunities to explain Dr. Wheatcraft's model and its station-specific tracing capabilities, and each time, the District has insisted that the model traces gasoline from each station at issue to a corresponding production well. Further, Dr. Wheatcraft maintains, contrary to defendants' assertions, that a station-specific model would be less effective than his plume model. Time will tell whether he is right, but for now, dismissal on the ground of causation is premature.

For the same reasons, summary judgment on the Trial Sites Motion is denied. That motion is predicated on the testimony of the District's hydrogeology expert, Anthony Brown, who was unable to conclude with confidence that MTBE releases at these certain trial sites pose a threat to Orange County's production

---

[84]     In a different MTBE case brought by the Crescenta Valley Water District, defendants prevailed on a *Daubert* motion excluding Dr. Wheatcraft's testimony. *See Crescenta Valley Water Dist. v. Exxon Mobil Corp., et al.*, No. Civ. 07 Civ. 02630 (C.D. Cal. Jan. 8, 2013) (Dkt. No. 273).

wells.[85]  However, the testimony of Dr. Wheatcraft, the District's fate-and-transport expert, expresses a clear opinion that these sites do pose a significant threat to production wells.  Accordingly, summary judgment on the Trial Sites Motion and on Issue 6 of the Omnibus Motion is denied.

### B.    The District Lacks Evidence Tracing the Issue 5 Defendants' Gasoline to the Stations

While the District can adequately trace gasoline from the stations at issue to the production wells to survive summary judgment, it cannot adequately place the Issue 5 defendants' gasoline at those stations, which it must do to prove causation for each of its claims against them.  Analyzing this ground for summary judgment dismissal requires two steps.  *First*, I need to evaluate whether the District has provided evidence showing that the Issue 5 defendants' gasoline was delivered to the relevant stations at the relevant times.  *Second*, in the absence of such evidence, I need to determine whether the District can establish the presence of defendants' gasoline at the stations in question through the commingled products theory.

As to the first part of the inquiry, the District simply lacks "reasonably probable" evidence that the gasoline of *any* Issue 5 defendant was delivered to *any*

---

[85]     *See generally* Def. Trial Sites Mem.

station at issue.[86]  The District attempts to manufacture a factual dispute regarding

certain suppliers based in part on market share figures concerning national MTBE

production capacity (as opposed to the MTBE supply to Southern California),[87]

information regarding sales of gasoline containing MTBE in California generally,[88]

and allegations that certain Issue 5 defendants might have sold gasoline to jobbers

who, in turn, supplied their gasoline to stations within Orange County.[89]  At

bottom, defendants correctly note that the District's explanations for how the Issue

5 defendants' gasoline was delivered to the stations at issue are entirely too vague

– they are "devoid of any specifics, but replete with conclusions, [that] are

insufficient to defeat a properly supported motion for summary judgment."[90]

       For that reason, I next turn to the question of whether the District can

show that the Issue 5 defendants' gasoline was blended into gasoline delivered to

the Orange County area or otherwise present at the stations at issue.  As I have

stated before, though, the commingled products theory is an alternate theory of

---

[86]    *In re MTBE*, 591 F. Supp. 2d at 266.

[87]    *See, e.g.*, Pl. Opp. at 21.

[88]    *See id.* at 21-23.

[89]    *See id.*

[90]    *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

proof which is "justified not when evidence is lacking, but when gathering evidence is, for practical purposes, impossible."[91]  The District cannot assert the commingled products theory here because gathering evidence was not impossible, nor nearly so.  It is undisputed that the District had ample opportunity to pursue discovery from jobbers and suppliers.  The preliminary interrogatories and defendants' initial responses regarding jobbers and suppliers at the outset of this litigation gave the District a good starting point from which to gather evidence tracing suppliers to the stations at issue.  For whatever reason, the District failed to pursue such evidence, waiting until two months before the close of discovery to subpoena forty station operators and deposing only one jobber in the seven years after asking defendants for, and being provided with, extensive jobber lists.  Indeed, the District's own expert recognized that the District could obtain the information it needed through "standard industry practices."[92]  Thus, the District cannot now rely on the commingled products theory to shield it from its own tactical or litigation decisions.  Accordingly, summary judgment is granted to the Issue 5 defendants on the ground that the District lacks evidence, which it could

---

[91]     *In re MTBE*, 980 F. Supp. 2d at 475.

[92]     Def. 56.1 ¶ 233 (citing the testimony of the District's expert, Dr. Barrington).

have obtained, tracing those defendants' products to the stations at issue.

**C.    The District Lacks Evidence of Affirmative Conduct Necessary to Establish Claims for Nuisance Against the Issue 1 Defendants**

It is not difficult to resolve the ground on which the Issue 1 defendants move in their favor.  I have already found that to be liable for nuisance under California law, "a defendant must take [] affirmative acts that contribute directly to the nuisance,"[93] and that a supply contract does not meet this criteria.[94] Following this precedent, the District's allegations here are plainly insufficient to withstand summary judgment as to the Issue 1 defendants.  The Issue 1 defendants did not own or have any significant control over the stations at issue; some of them merely had supply contracts with the stations at issue.  The District's allegations regarding failure to provide storage and handling instructions relate to a potential products liability claim, but not to a claim for nuisance.  As I have ruled in the past, California law is clear that products liability claims disguised as nuisance claims must fail.[95]  Accordingly, summary judgment is granted to the Issue 1 defendants on the claims against them for nuisance.

---

[93]    *In re MTBE*, 457 F. Supp. 2d at 463.

[94]    *See In re MTBE*, 980 F. Supp.2d at 460 (dismissing nuisance claims based solely on supply contracts).

[95]    *See In re MTBE*, 457 F. Supp. 2d at 463.

**D.      Whether the Contamination Continues to Migrate Beyond the Stations at Issue Is in Dispute**

In determining claims for continuing nuisance, California courts examine whether the alleged offensive activity is currently continuing.[96]  Because Dr. Wheatcraft's testimony creates a factual dispute regarding whether the alleged MTBE contamination at each station at issue has migrated beyond those stations and towards the production wells, summary judgment on this claim is denied.[97]

**E.      The District Lacks Evidence of Affirmative Conduct Necessary to Establish Claims Under the OCWD Act Against the Issue 3 Defendants**

Because the District has not demonstrated the affirmative conduct necessary to establish nuisance claims against the Issue 1 defendants, if the OCWD Act claims require a similar showing of affirmative conduct, then the OCWD Act claims against the Issue 3 defendants must also be dismissed.  Both the District and defendants acknowledge that the OCWD Act itself is vague about the level of

---

[96]      *See California v. Kinder Morgan Energy Partners, L.P.*, No. 07 Civ. 1883, 2013 WL 314825, at *23 (S.D. Cal. Jan. 25, 2013).

[97]      As noted above, it is possible that a successful *Daubert* motion may result in a dismissal of the continuing nuisance claims, but at this stage, Dr. Wheatcraft's model keeps the District's continuing nuisance claims against the Issue 2 defendants alive.

affirmative conduct required to trigger liability under the Act.[98]  Specifically, the

Act does not elucidate whether the word "cause" should be read to require

affirmative conduct, as in common law nuisance claims, or whether "cause" should

be interpreted more liberally, in a departure from common law nuisance claims.[99]

The parties do not dispute, however, that when legislation does not expressly

purport to depart from the common law, "it will be construed in light of common

law principles bearing upon the same subject."[100]

Accordingly, in an effort to defeat summary judgment as to the Issue

3 defendants, the District crafts a statutory construction of the OCWD Act,

construing it in light of the remedial purposes of the Comprehensive

Environmental Response, Compensation, and Liability Act ("CERCLA"), a federal

environmental statute.[101]  The District insists that analogizing to a different

statutory scheme is necessary because the OCWD Act purports to depart from the

common law of nuisance by, in general terms, requiring the Act to be liberally

---

[98]     *See* Cal. Water Code App. § 40-8(c) (claims can be asserted against
those persons "causing or threatening to cause . . . contamination or pollution");
Def. Reply Mem. at 8-10; Pl. Opp. at 11-13.

[99]     *See* Def. Reply Mem. at 8-10; Pl. Opp. at 11-13.

[100]     *Leslie Salt Co. v. San Francisco Bay Conservation etc. Com.*, 153 Cal.
App. 3d 605, 618-19 (1984).

[101]     *See* Pl. Opp. at 11-13.

construed.[102]  The District then notes that environmental statutes under CERCLA require a plaintiff to prove only that a defendant possessed a chemical that could have reached a plaintiff's property – a much laxer standard than the "affirmative conduct" required to establish a claim for common law nuisance.[103]

But the District's effort fails because the OCWD Act does not in any way expressly depart from the common law, as I have recognized in a prior MTBE ruling.[104]  Therefore, I must interpret the OCWD Act in light of common law principles bearing on nuisance, following the lead of the California courts.[105]  Thus, summary judgment to the Issue 3 defendants is granted because, as with the Issue 1 defendants, the District has not established the level of affirmative conduct necessary to prevail under the OCWD Act.

### F.   The District Lacks Evidence of Recoverable Costs Under the OCWD Act

The Court is quite familiar with the subject of costs recoverable under

---

[102]     *See id.* at 12 (citing Cal. Water Code App. § 40-75).

[103]     *See id.* at 13.

[104]     *See In re MTBE*, No. 04 Civ. 4972, 2005 WL 1500893, at *5 (S.D.N.Y. June 24, 2005) (interpreting the OCWD Act as empowering the District to bring claims sounding in nuisance).

[105]     *See, e.g.*, *City of Modesto*, 199 Cal. App. 4th at 36 (applying nuisance standard to California's Polanco Act).

-31-

the OCWD Act.[106]  I have granted summary judgment on this issue at focus sites in the past because the District cannot recover under the OCWD Act costs that are clearly investigative, not remedial, in nature.[107]  Because the District has not presented or timely identified any new remedial costs incurred under the OCWD Act, I now grant summary judgment in favor of the Issue 4 defendants on the OCWD Act claims against them.

The District's primary argument against granting summary judgment on this ground is that the types of costs it has allegedly incurred are indeed recoverable under the Act.  These costs, the District insists, are categorically different from the costs I have previously ruled unrecoverable under the OCWD Act.[108]  However, in support of that contention, the District does not identify in any detail the alleged site-specific remedial action for which it seeks compensation.  Instead, it relies on vague discovery responses and an expert declaration that the Court previously declined to consider in the prior summary judgment briefing on

---

[106]     *See In re MTBE*, 279 F.R.D. at 138.

[107]     *See id.*; *In re MTBE*, 824 F. Supp. 2d at 534-35 ("The plain language of the Act" states that "[t]he costs incurred for remediation are recoverable, but the costs incurred for investigation are not.").

[108]     *See* Pl. Opp. at 14.

this issue.[109]  In any event, these materials do not point to recoverable costs under

the OCWD Act, nor are they entitled to be considered now.  The District failed to

follow the Court's instructions in my prior ruling, in which I noted that the District

"may have to re-open discovery" in order to identify specific, recoverable costs.[110]

But the District never sought leave to do so, and in this new round of briefing has

not pointed to a single specific cost that could be considered recoverable under the

OCWD Act.

        The District has apparently tried to circumvent the consistent position

of this Court, and other courts, regarding costs recoverable under the OCWD Act

by appealing to the California legislature, but to no avail.  The District sponsored a

bill to amend the Act and make a party "liable for the actual costs incurred

*investigating* the contamination or pollution."[111]  Indeed, the stated premise of the

District's proposal was based on its claim that in prior MTBE contamination cases,

"judges have misinterpreted the OCWD Act as excluding investigatory work from

remedial expenses recoverable under the OCWD Act."[112]  The legislature

---

[109]     *See* Rule 56.1 Statement ¶ 111.

[110]     *In re MTBE*, 279 F.R.D. at 138.

[111]     Def. Reply Mem. at 12 (quoting the legislative history) (emphasis added).

[112]     *Id.*

apparently did not agree enough to amend the Act, and the bill died in February 2014.[113]  The guidance from my prior decisions, and now the California legislature itself, is quite clear:  the District cannot recover investigative costs, which are the only types of costs under the OCWD Act that the District has identified in this action.  Thus, summary judgment on the OCWD Act claims against the Issue 4 defendants is granted.

### G.  Claims at Certain Stations Are Barred by the Statute of Limitations

I have also addressed the statute of limitations in this case at length in prior opinions.[114]  Consistent with my prior statute of limitations rulings and the District's own past representations, and because the District has again failed to submit any evidence sufficient to create a factual dispute regarding a post-limitations period release, dismissal of negligence, strict liability, and permanent nuisance claims against the Issue 7 defendants on statute of limitations grounds is warranted.

There are three stations at issue in this analysis:  Mobil 18-HEP, Chevron #9-5568, and World Oil #39.  *First*, the Issue 7 defendants and the

---

[113]    *See id.*

[114]    *See, e.g.*, *In re MTBE*, 676 F. Supp. 2d at 145.

-34-

District do not dispute that the relevant claims at Mobil 18-HEP are time-barred,[115] which they indeed are.[116]  *Second*, the District's relevant claims at Chevron #9-5568 are barred by their own past concessions.  In a prior round of briefing, the District conceded that its claims at this site accrued prior to May 6, 2000.[117]  The District's bold attempt here to reverse course and now submit evidence contradicting its prior admission fails as a matter of law.[118]  Even if I were to accept it, the evidence the District offers to prove a post-May 6, 2000 release at this site is wholly insufficient.  The District relies on a rather generic, non-site-specific expert opinion regarding evidence of underground storage tanks leaking over time to create a factual dispute over when the instant claim accrued.  However, pursuant to my prior rulings, without more concrete site-specific evidence, summary judgment must be granted.  *Third*, because the District relies on the same evidence to show a post-limitations release at the final site, World Oil #39, the relevant claims at this site must also be dismissed for the reasons stated above.  Accordingly, summary judgment is granted to the Issue 7 defendants on

---

[115]     *See* Pl. Opp. at 30 & n.20.

[116]     *See In re MTBE*, 676 F. Supp. 2d at 149-50.

[117]     *See* Rule 56.1 Statement ¶ 257.

[118]     *See In re MTBE*, 980 F. Supp. 2d at 439 (noting that a court can treat statements in briefs as binding judicial admissions of fact).

their negligence, strict liability, and permanent nuisance claims.

### H.   The District's Late-Disclosed Theories of Liability Regarding the Issue 8 Defendants Cannot Prevail

As I stated in the New Jersey MTBE case,[119] the Court will not accept theories of liability disclosed well after the close of discovery and in responses to contention interrogatories.[120]  The District does not dispute this reality, but instead insists that it disclosed the claims it planned to assert against each defendant on a station-specific basis during discovery.[121]  In particular, the District points to a response to Interrogatory No. 1, which it contends associated each Issue 8 defendant with each focus plume at issue.[122]

But, as defendants accurately point out, this representation is misleading because the interrogatory response simply associated *all* defendants with *all* focus plumes, prompting an extended meet-and-confer that culminated in the District providing supplemental discovery responses that identified on a station-by-station basis each defendant associated with a particular focus station.[123]

---

[119]     *See In re MTBE*, 2014 WL 494522, at *2.

[120]     *See id.* at *3.

[121]     *See* Pl. Opp. at 30-35.

[122]     *See id.* at 32.

[123]     *See* Def. Reply Mem. at 24.

These supplemental responses did not identify the Issue 8 defendants at the Issue 8 stations, nor can the District show at any other point during discovery that it disclosed specific information sufficient to put the Issue 8 defendants on notice of how, and at which stations, the District planned to hold them liable.  The station matrix containing this necessary information was prepared several years after the close of fact discovery for the convenience of the Court and the parties in preparing for summary judgment motions.  Accordingly, the Issue 8 defendants have been deprived of the opportunity to participate in meaningful discovery concerning the stations now associated with them.  Therefore, summary judgment to the Issue 8 defendants is granted on the claims associated with the Issue 8 stations.[124]

## VI.   CONCLUSION

For the foregoing reasons, defendants' Omnibus Motion is GRANTED in part and DENIED in part.  Defendants' Trial Sites Motion is DENIED.  The Clerk of the Court is directed to close these motions [Dkt. Nos. 344 and 349].

---

[124]    With the dismissal of claims on other grounds presented in the Omnibus Motion, the only claim that the Issue 8 ground independently affects is the claim for continuing nuisance against Exxon Mobil Corporation at World Oil #39.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:    New York, New York
            December 18, 2014

**- Appearances -**

**Liaison Counsel for Plaintiffs:**

William A. Walsh, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, NY 10038
(212) 558-5500

**Counsel for the District**:

Michael D. Axline, Esq.
Tracey L. O'Reilly, Esq.
Miller, Axline, & Sawyer
1050 Fulton Avenue, Suite 10
Sacramento, CA 95825
(916) 488-6688

**Liaison Counsel for Defendants:**

James A. Pardo, Esq.
Lisa A. Gerson, Esq.
McDermott Will & Emery LLP
50 Rockefeller Plaza, 11th Floor
New York, NY 10020
(212) 547-5583

**Counsel for Trial Sites Defendants:**

Richard E. Wallace, Jr., Esq.
Peter C. Condron, Esq.
Amanda Gilbert, Esq.
Sedgewick LLP
29 K Street, N.W.
Harbourside – Suite 500
Washington, D.C. 20007
(202) 204-1000

**Counsel for Omnibus Defendants**:

Jeffrey J. Parker, Esq.
Whitney J. Roy, Esq.
Sheppard, Mullin, Richter & Hampton LLP
333 South Hope Street, 48th Floor
Los Angeles, California 90071
(213) 620-1780

Jon D. Anderson, Esq.
Latham & Watkins LLP
650 Town Center, 20th Floor
Costa Mesa, California 92626
(714) 540-1235